813 F.2d 403
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
The SOUTH CAROLINA NATIONAL BANK, Appellee,
v.
Virginia L. DARMSTADTER, Appellant.
The SOUTH CAROLINA NATIONAL BANK, Appellee,
v.
Virginia L. DARMSTADTER, Appellant.
 Nos. 85-2198(L), 86-1549.
 United States Court of Appeals, Fourth Circuit.
 Argued June 4, 1986.
Decided Sept. 4, 1986.
 
 Before HALL, MURNAGHAN and SPROUSE, Circuit Judges.
 James R. Gilreath (H. Mark Emanuel; Law Offices of James R. Gilreath, P.A., on brief), for appellant.
 Jennings L. Graves, Jr. (Love, Thornton, Arnold & Thomason, on brief), for appellee.
 PER CURIAM:
 
 
 1
 Virginia L. Darmstadter appeals from the district court's grant of summary judgment to the South Carolina National Bank (SCN). SCN brought this diversity action to collect on a promissory note which Darmstadter gave SCN in exchange for a loan. Darmstadter, who used the loan to finance her investment in a venture involving the purchase of railroad boxcars, counterclaimed alleging that the note was a security and that SCN had violated federal and South Carolina securities laws and fiduciary duties imposed by state law. On cross-motions for summary judgment, the district court found that the promissory note was not a security, and thus not subject to federal or state securities regulation, and that SCN had not violated its fiduciary duties. The district court granted SCN's motion for summary judgment and awarded it $60,975.83 on the note, $6,074.58 in attorneys' fees, and $712.29 in collection fees. We affirm.
 
 I.
 
 2
 The genesis of this case was in Darmstadter's purchase of two railroad boxcars through an investment venture organized by the National Railroad Utilization Corporation (NRUC). Darmstadter's involvement with NRUC dates back at least to 1972 when she inherited a large block of NRUC stock from her husband. NRUC, a South Carolina corporation, supplied and managed boxcars for its own account and for others, assembled and sold general purpose boxcars, and operated short-line railroads. When Darmstadter experienced financial difficulties in 1977, she contacted NRUC president John Rees about selling her stock. Rees advised her not to sell the stock and offered her a position, which she accepted, at an annual salary of $16,000 as director of the Washington, D.C. office which NRUC was planning to open.
 
 
 3
 During 1977, NRUC developed the concept of selling boxcars to its management personnel and stockholders and, on four occasions from December 1977 to June 1979, made boxcars available for purchase by those individuals. Under each purchaser's agreement with NRUC, NRUC managed, maintained and arranged for utilization of the boxcars. The purchaser had essentially a passive role in the management of the boxcars. NRUC also arranged financing for each individual's purchase of boxcars. NRUC negotiated with Citicorp Leasing to provide financing for the first venture in December 1977. It arranged for SCN, with which it had a long-standing relationship, to provide financing for the second and third ventures in June 1978 and December 1978, respectively. New England Merchants Bank provided financing for the fourth venture in June 1979.
 
 
 4
 Darmstadter participated in the December 1978 and June 1979 ventures.[1] She borrowed ninety percent of the purchase price of two boxcars from SCN to finance her participation in the December 1978 venture, and it is that loan which is the subject of this appeal.[2] Darmstadter executed a five and one-half year promissory note payable to SCN which was collateralized by her investment in the boxcars and the management agreement with NRUC. She also executed an agency agreement with SCN under which NRUC pooled her earnings on the boxcars with those of other purchasers who signed such agreements. After deducting maintenance expenses, NRUC transferred these pooled earnings to SCN's trust department. The trust department then paid the debt service due on Darmstadter's promissory note to SCN's commercial loan department and held any excess revenue above debt service in an escrow account until her promissory note was due at the end of five and one-half years.
 
 
 5
 The purchasers' expectations apparently were that boxcar revenues would exceed their obligations to SCN. A sharp drop in the utilization rate for NRUC boxcars beginning in late 1979, however, upset expectations. Revenues fell below debt service requirements, and SCN sought recovery from the individual purchasers. When Darmstadter refused to pay on her note, SCN brought this action.
 
 II.
 
 6
 Darmstadter argues on appeal that federal and state securities laws are applicable to her transaction with SCN and that SCN violated those laws.[3] Section 12 of the Securities Act of 1933, 15 U.S.C. Sec. 771, section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. Sec. 78j(b), and section 35-1-1490 of the South Carolina Uniform Securities Act, S.C.Code Ann. Sec. 35-1-1490, require the disclosure of all material facts in connection with the purchase or sale of a security. The federal and state statutes define a "security" to include a "note." 15 U.S.C. Secs. 77b(1), 78c(a)(10); S.C.Code Ann. Sec. 35-1-20(12). Not every note, however, is a security under these statutes. See United Housing Foundation v. Forman, 421 U.S. 837, 849 (1975); Futura Development Corp. v. Centex Corp., 761 F.2d 33, 38-39 (1st Cir.), cert. denied, 106 S.Ct. 147 (1985). Courts look to the economic realities of the transaction, not the name given to the instrument, to determine if, in fact, a note is a security within the meaning of the statutes. See Forman, 421 U.S. at 849.
 
 
 7
 A number of tests have evolved for analyzing these economic realities. Futura Development Corp., 761 F.2d at 40-41. The Second Circuit interprets the language of the securities acts to require that the court presume a note to be a security and exempt it only if the context requires otherwise. Exchange National Bank of Chicago v. Touche Ross & Co., 544 F.2d 1126, 1137-38 (2d Cir.1976), modified, Chemical Bank v. Arthur Andersen & Co., 726 F.2d 930, 936-39 (2d Cir.), cert. denied, 105 S.Ct. 253 (1984). The Sixth and Ninth Circuits look to see whether a transaction more closely resembles a loan or has the risk factors associated with the investment of "risk capital." Union Planters National Bank v. Commercial Credit Business Loans, 651 F.2d 1174, 1182 (6th Cir.), cert. denied, 454 U.S. 1124 (1981); Great Western Bank & Trust v. Kotz, 532 F.2d 1252, 1257 (9th Cir.1976). Other circuit courts of appeals employ the investment/commercial test which focuses on whether a transaction more closely resembles typical investment situations or typical mercantile or commercial transactions. Futura, 761 F.2d at 40-41. The criteria used by these courts includes "the size of the offering; whether there is, by necessity, reliance on the expertise of the issuer; the purpose of the issuer in executing the note and the payee in accepting the note; and the economic inducements held out to the prospect." Id. at 41 (citations omitted).
 
 
 8
 Under none of these tests is Darmstadter's note a security. SCN, in providing the loan in return for the note, was not relying on the expertise of the issuer, Darmstadter. The Bank accepted her note to secure the repayment of the loan. Repayment, however, was not conditioned upon the success of the use to which Darmstadter put the loan proceeds. The Bank was entitled to repayment regardless of the outcome of the boxcar venture. The note provided for a fixed rate of interest and payments in fixed amounts on fixed dates. It is apparent that the Bank did not acquire the note as an investment, nor did it risk capital beyond the risk inherent in many commercial loans.
 
 
 9
 Darmstadter argues, however, that her note was not executed pursuant to a normal commercial transaction in which the party seeking to borrow money initiates the transaction. SCN, she asserts, provided at least some of the impetus for the transaction. She is no doubt correct that SCN's willingness to make the loan facilitated the boxcar investment plan which NRUC had developed. It is also true that NRUC and SCN had a long-standing relationship prior to any of the boxcar ventures. These facts, however, do not change an obvious commercial loan into a securities transaction.
 
 
 10
 In our review, of course, we are guided by the underlying purpose of the federal securities laws: to protect against fraud in "the countless and variable schemes devised by those who seek the use of the money of others on the promise of profits." SEC v. W.J. Howey Co., 328 U.S. 293, 299 (1946). Here, Darmstadter sought to use SCN's money--not the reverse. She urges, however, that because the note had a repayment period of five and one-half years, her risk of loss under that note supports a determination that the note was a security. That argument ignores the fact that the term of the note represents the period for which the money which SCN loaned to Darmstadter is at risk.
 
 
 11
 Darmstadter's dealings with NRUC may very well constitute an investment contract subject to securities regulation. See 15 U.S.C. Secs. 77b(1), 78c(a)(10); SEC v. W.J. Howey Co., 328 U.S. 293 (1946). The note which Darmstadter issued to SCN, however, is so clearly a part of a commercial lending transaction with a significance independent of the contract between her and NRUC that it is not subject to securities regulation.
 
 
 12
 In view of the above, the decision of the district court is affirmed.
 
 
 13
 AFFIRMED.
 
 
 
 [1]
 Darmstadter's participation in the June 1979 venture, which New England Merchants Bank financed, is not relevant to this appeal
 
 
 [2]
 Darmstadter also borrowed her downpayment on the boxcars from SCN through a 29-day consumer note
 
 
 [3]
 Darmstadter also asserts that the district court, apparently ex parte, erred in asking SCN to prepare a proposed order of findings and conclusions granting summary judgment to SCN. The court then used SCN's proposal as the basis of its own order. Darmstadter argues that we should not apply the clearly erroneous standard of Rule 52 of the Federal Rules of Civil Procedure and should remand the case for further proceedings. The district court, however, did not adopt SCN's proposed findings verbatim. Even if it had, that action appears proper under the recent Supreme Court holding that "even when the trial judge adopts proposed findings verbatim, the findings are those of the court and may be reversed only if clearly erroneous." Anderson v. City of Bessemer City, 105 S.Ct. 1504, 1511 (1985)